USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 11, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

BRIDGEPOINTE MASTER FUND LTD., :

                Petitioner, :     09 Civ. 6874 (PAC)

-against- :     <u>ORDER</u>

BIOMETRX, INC., :

                Respondent. :

--------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Bridgepointe Master Fund Ltd. ("Bridgepointe") petitions, pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 <u>et</u> <u>seq</u>., for an Order confirming and entering judgment on an arbitration award made by a panel of the American Arbitration Association on July 2, 2009.

Bridgepointe is an investment fund with its principal place of business in the Cayman Island. Respondent BIOMETRX ("BMRX") is a Delaware Corporation with its principal place of business in Jericho, Long Island, New York. The Court notes its jurisdiction under 28 U.S.C. § 1332.

Bridgepointe and BMRX entered into a series of financial transactions:

(1) Securities Purchase Agreement, dated December 28, 2006;

(2) A Convertible Debenture payable to Bridgepointe, dated December 29, 2006; and

(3) An Extension and Waiver Agreement, dated September 9, 2008.

No payments were made by BMRX and on February 11, 2009, Bridgepointe demanded expedited arbitration pursuant to the terms of the Securities Purchase Agreement, and the Convertible Debenture,[1] both of which provided, in pertinent part:

**9. GOVERNING LAW; MISCELLANEOUS**

a. **<u>Governing Law; Arbitration</u>**.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York.  Any controversy or claim arising out of or related to the Debenture or the breach thereof, shall be settled by binding arbitration in New York, New York in accordance with the Expedited Procedures (Rules 53-57) of the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  A proceeding shall be commenced upon written demand by the Company or Buyer to the other.  The arbitrator(s) shall enter a judgment by default against any party, which fails or refuses to appear in any properly noticed arbitration proceeding.  The proceeding shall be conducted by one (1) arbitrator, unless the amount alleged to be in dispute exceeds two hundred fifty thousand dollars ($250,000), in which case three (3) arbitrators shall preside.  The arbitrator(s) will be chosen by the parties from a list provided by the AAA, and if the parties are unable to agree within ten (10) days, the AAA shall select the arbitrator(s).  The arbitrators must be experts in securities law and financial transactions.  The arbitrators shall assess costs and expenses of the arbitration, including all attorneys' and experts' fees, as the arbitrators believe is appropriate in light of the merits of the parties' respective positions in the issues in dispute.  Each party submits irrevocably to the jurisdiction of any state court sitting in New York, New York or to the United States District Court sitting in New York, New York for purposes of enforcement of any discovery order, judgment or award in connection with such arbitration.  The award of the arbitrator(s) shall be final and binding upon the parties and may be enforced in any court having jurisdiction.  The arbitration shall be held in such place as set by the arbitrator(s) in accordance with Rule 55.  With respect to any arbitration proceeding in accordance with this section, the prevailing party's reasonable attorney's fees and expenses shall be borne by the non-prevailing party.

After Notice of Arbitration was provided, an arbitration hearing was held on June 22, 2009.  Bridgepointe made its presentation, submitted evidence and made its

---

[1] The Securities Purchase Agreement and the Convertible Debenture provide for arbitration in nearly identical language.  The Extension and Waiver Agreement expressly reserves all rights under the Securities Purchase Agreement and Convertible Debenture.

arguments; BMRX chose not to participate. After due consideration, the Arbitration Panel made the following award:

> 1. Within 30 days of the date of this Award, Respondent shall pay to Claimant $576,324.85 and $21,890.00 representing Claimant's attorney's fees.
>
> 2. The administrative filing and case service fees of the International Centre for Dispute Resolution ("ICDR"), the international division of the American Arbitration Association ("AAA"), totaling $8,500.00, shall be borne entirely by Respondent bioMETRX, Inc.
>
> 3. The compensation and expenses of the Arbitrators, totaling $8,794.00, shall be borne entirely by Respondent bioMETRX, Inc.
>
> 4. Therefore, Respondent bioMETRX, Inc. shall reimburse Claimant Bridge Pointe Master Fund Ltd. the sum of $12,897.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant Bridge Pointe Master Fund Ltd.
>
> 5. This Award is in full satisfaction of all claims submitted to this arbitration.

Bridgepointe now moves to enforce the award of $628,405.85.

## BMRX's Objections

BMRX argues that "the only notice [it] received of the hearing dates was an email communication, dated June 17, 2009 . . ." (BMRX Memorandum of Law in Opposition, dated September 1, 2009, pg. 1.) The notice provided two business days for preparation for the hearing.

BMRX objected on June 18, 2009, complaining about the short notice. The arbitrators initially indicated that a one week adjournment might be agreeable, (id. at pg. 2), but one day later, on June 19, 2009, the arbitrators indicated that the arbitration proceeding would proceed on June 22, 2009. (Ibid.)

3

BMRX argues that the arbitrators were guilty of misconduct because they should have postponed the hearing to allow BMRX more time to prepare for arbitration. According to BMRX, the arbitrators erred by concluding that the proceeding had to be expedited.

BMRX also argues that while it is not necessary to demonstrate that it had a meritorious defense in order to be entitled to an adjournment, BMRX had such a defense. BMRX asserts that the transaction between the two parties was void because the financial arrangements were criminally usurious. Had more time been allowed, BMRX would have presented this defense.

Accordingly, BMRX requests that the Verified Petition to Confirm the Award be denied and the Award vacated.

### **ANALYSIS**

Arbitration awards are subject to "very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long expensive litigation." Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993). Indeed, "the showing required to avoid summary confirmation is very high." Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987). And the party seeking vacatur of the award bears the burden of proof. See Ottawa Office Integration, Inc. v. FTF Bus. Sys., Inc., 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) (citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997).

Under the FAA, only in extremely limited circumstances will an arbitration award be vacated. See 9 U.S.C. § 10(a). One such limited circumstance is where "the

arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown . . . ." § 10(a)(3). "If, however, there exists a 'reasonable basis for the arbitrators' considered decision not to grant a postponement,' a court should be reluctant to interfere with the award." Ottowa Office, 123 F. Supp. 2d at 220 (quoting Roche v. Local 23B-32J Serv. Employees Int'l Union, 755 F. Supp. 622, 625 (S.D.N.Y. 1991)). In other words, "as long as there is at least 'a barely colorable justification' for the arbitrators' decision not to grant an adjournment, the arbitration award should be enforced." Bisnoff v. King, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001).

While BMRX complains of short notice, in fact, it had ample notice of the arbitration. Instead, it deliberately chose not to participate. Indeed, it appears in light of its non-performance of the financial agreement and failure to pay the amount due and owing, which it does not contest, the BMRX made a tactical choice to absent itself from the arbitration.

BMRX's argument about preemptory (i.e., two business days) notice ignores the facts and its own behavior during the time leading up to the arbitration. The Arbitration was commenced by the filing of a demand for arbitration on February 11, 2009, four months before the date of arbitration. The demand was served on BMRX and its attorney at that time. On February 26, 2009, the attorney advised that neither he nor his firm would be attending a conference call and that they were no longer appearing on BMRX's behalf. Significantly, Mark Basile, BMRX's CEO, indicated he had received notice of the proceeding, but had not retained counsel as of yet. Instead, he referred to a possible bankruptcy and that "all actions against the company will be automatically stayed." (Rappaport Aff'd., Ex. F).

Indeed, the record reflects BMRX's conscience refusal to participate in any aspect of the proceedings leading up to the arbitration. On June 2, 2009, the American Arbitration Association advised BMRX's CEO that in the future, he would be sent all correspondence. Also, the Association asked for an update on the retention of Bankruptcy Counsel. Neither BMRX nor its CEO responded to this inquiry. There was a pre-arbitration procedural meeting on June 11, 2009, but BMRX did not attend.

While the arbitration panel rejected BMRX's request to adjourn the proceedings to July 1 or 2, 2009,[2] it offered BMRX an opportunity to renew its request for an adjournment at the June 22, 2009 hearing. Again, BMRX chose not to attend on June 22, 2009, and so did not avail itself of the opportunity to renew its request.

BMRX concedes that not every request for an adjournment needs to be granted; and that the arbitration panel has broad discretion, which the Courts will not interfere with, to grant or deny adjournments. (Memorandum of Law in Opposition, pg. 4).

That concession is fatal to BMRX's argument. There is nothing objectively wrong with refusing an adjournment, much less arbitral misconduct. This is especially so where BMRX had chosen to not participate in any pre-arbitral proceeding. Finally, BMRX passed on the opportunity to make its case for an adjournment directly to the arbitral panel.

In these circumstances, there was every reason to deny the request and no real good reason to grant it. This conclusion is further supported by the fact that nothing

---

[2] BMRX's argument that the parties did not intend to adopt expedited procedures (Memorandum of Law in Opposition, pp. 4-5) flies in the face of the clear and unequivocal language of the arbitration clause: all controversies shall be settled "in accordance with the Expedited Procedures . . . of the Commercial Arbitration Rules of the American Arbitration Association" (citation to Rules omitted). The language which both parties agreed to, provides yet another reasonable and appropriate basis for denial of BMRX's request for an adjournment.

6

fundamentally unfair happened in the arbitral proceedings. BMRX never disputed that there was a Securities Purchase Agreement, a Convertible Debenture, and an Extension and Waiver Agreement; that it had defaulted in its performance; and that it had never paid Bridgepointe. In many ways, the arbitration was like an action on a note in which the note maker offers no defense.

The usury defense now offered for the first time is strictly an afterthought. Further, the argument that the financial transactions were criminally usurious is not well grounded in law. (N.Y. GOL § 5-521(1) prohibits corporations from interposing defense of usury.) And as counsel admitted at oral argument on December 9, 2009, such a defense require little preparation and could have been made and submitted to the arbitral panel on short notice. The arbitration agreement, mandated a panel of "experts in securities law and financial transactions." They would have easily grasped the BMRX's argument. Whatever the validity of the argument, it would have easily been made and considered by the arbitral panel, where it should have been or presented. Now, however, it provides no reason for not enforcing the arbitral award.

## Conclusion

The Petition to Confirm the Arbitral Award is GRANTED. The Clerk of the Court is directed to enter judgment thereon, against BMRX, in the amount of $628,405.85. The Clerk of Court is further directed to close this matter.

Dated: New York, New York
       December 10, 2009

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge